TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective,*
*and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 ---------------------------------------------------------------- x

Jinquan Yin and
Letian Zhu,
*on behalf of themselves and others similarly situated,*
                                        Plaintiff,

                        v.

518 Pomodoro, Inc.
        d/b/a Pomodoro,
Pomodoro Italian Express Inc.
        d/b/a Pomodoro,
Yun Hui Chen
        a/k/a Winnie Chen,
Tao Chen, and
Zhen Huang Zheng,
                                Defendants.
 ---------------------------------------------------------------- x

**Case No: 17-cv-10244**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION**
**& FED. R. CIV. P. 23**
**CLASS ACTION**

**COMPLAINT**

Plaintiffs Jinquan Yin and Letian Zhu (hereinafter referred to as "Plaintiffs"), on behalf

of themselves and others similarly situated, by and through their attorney, Troy Law,

PLLC, hereby bring this complaint against Defendants 518 Pomodoro, Inc. d/b/a

Pomodoro, Pomodoro Italian Express Inc. d/b/a Pomodoro, Yun Hui Chen a/k/a Winnie

Chen, Tao Chen, and Zhen Huang Zheng (hereinafter referred to as "Defendants"), and

allege as follows:

**<u>INTRODUCTION</u>**

1.      This action is brought by the Plaintiffs, on behalf of themselves as well as other

employees similarly situated, against the Defendants for alleged violations of the Fair

Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq.* and New York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.      Defendants refused to record all of the time that Plaintiff and similarly situated employees employed by the Corporate Defendants work or worked, including work done in excess of forty hours each week.

4.      Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid overtime wages (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.

5.      Plaintiff further alleges pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that he is entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the

employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

6.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

7.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

8.    Plaintiff Jinquan Yin ("Yin") was employed by Defendants to work as a deliveryman at Pomodoro, located at 518 Ninth Avenue, New York, NY 10018.

9.    Plaintiff Letian Zhu ("Zhu") was employed by Defendants to work as a deliveryman at Pomodoro, located at 518 Ninth Avenue, New York, NY 10018.

## DEFENDANTS

### Corporate Defendants

10.    518 Pomodoro, Inc. d/b/a Pomodoro is a domestic business corporation organized under the laws of the State of New York with a principal address at 518 Ninth Avenue, New York, NY 10018.

11.    518 Pomodoro, Inc. d/b/a Pomodoro is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

12.    518 Pomodoro, Inc. d/b/a Pomodoro purchased and handled goods moved in interstate commerce.

13.    Pomodoro Italian Express Inc. d/b/a Pomodoro was a domestic business corporation organized under the laws of the State of New York with a principal address at 518 Ninth Avenue, New York, NY 10018.

14.    Pomodoro Italian Express Inc. d/b/a Pomodoro was a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

15.    Pomodoro Italian Express Inc. d/b/a Pomodoro purchased and handled goods moved in interstate commerce.

16.    At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Corporate Defendants.

17.    At all relevant times, Corporate Defendants employed in excess of ten (10) employees at any one time.

***Owner/Operator Defendants***

18.    The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendants and being among the ten largest shareholders and/or LLC members, are individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

19.    Yun Hui Chen a/k/a Winnie Chen, known to Plaintiffs as "Lady Boss," (1) had

the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at 518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro.

20.    Yun Hui Chen a/k/a Winnie Chen was actively involved in the day-to-day management of 518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro.

21.    Yun Hui Chen a/k/a Winnie Chen operated the cash register at 518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro and from that position managed the "front of the house."

22.    Yun Hui Chen a/k/a Winnie Chen shares a home address with the address listed registered with the New York Department of State as 518 Pomodoro, Inc.'s d/b/a Pomodoro's principal executive office: 53-16 190th Street, Fresh Meadows, NY 11365.

23.    Yun Hui Chen a/k/a Winnie Chen is the wife of Zhen Huang Zheng.

24.    Yun Hui Chen a/k/a Winnie Chen acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Pomodoro Express Italian Inc. d/b/a Pomodoro.

25.    Tao Chen (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at 518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro.

26.    Tao Chen was actively involved in the day-to-day management of 518 Pomodoro,

Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro and is the Chief

Executive Officer of 518 Pomodoro, Inc. d/b/a Pomodoro.

27.     Tao Chen acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2,

NYLL § 2 and the regulations thereunder, and is jointly and severally liable with

Pomodoro Express Italian Inc. d/b/a Pomodoro.

28.     Zhen Huang Zheng, known to Plaintiffs as "Lady Boss," (1) had the power to hire

and fire employees, (2) supervised and controlled employee work schedules or conditions

of employment, (3) determined the rate and method of payment, and (4) maintained

employee records at 518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express

Inc. d/b/a Pomodoro.

29.     Zhen Huang Zheng was actively involved in the day-to-day management of 518

Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro, and

was the Chief Executive Officer of Pomodoro Italian Express Inc. d/b/a Pomodoro.

30.     Zhen Huang Zheng was a chef at 518 Pomodoro, Inc. d/b/a Pomodoro and

Pomodoro Italian Express Inc. d/b/a Pomodoro and from that position managed the "back

of the house."

31.     Zhen Huang Zheng shares a home address with the address listed registered with

the New York Department of State as 518 Pomodoro, Inc.'s d/b/a Pomodoro's principal

executive office: 53-16 190th Street, Fresh Meadows, NY 11365.

32.     Zhen Huang Zheng is the husband of Yun Hui Chen a/k/a Winnie Chen.

33.     Yun Hui Chen a/k/a Winnie Chen acted intentionally and maliciously and is an

employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder,

29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Pomodoro Express Italian Inc. d/b/a Pomodoro.

34.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

<u>**STATEMENT OF FACTS**</u>

***Corporate Defendants are Successor Employers***

35.     518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro both operated Pomodoro, located at 518 Ninth Avenue, New York, NY 10018, during the relevant period.

36.     Upon information and belief, Pomodoro Italian Express Inc. d/b/a Pomodoro operated Pomodoro from on or about March 11, 2005 to August 5, 2014.

37.     Upon information and belief, 518 Pomodoro, Inc. d/b/a Pomodoro operated Pomodoro from on or about November 21, 2012 to the present time, together with Pomodoro Italian Express Inc. d/b/a Pomodoro from November 21, 2012 to August 5, 2014.

38.     Throughout the relevant period, Pomodoro has continued in substantially the same business of preparing, serving, and delivering Italian cuisine.

39.     Throughout the relevant period, Pomodoro has operated out of 518 Ninth Avenue, New York, NY 10018.

40.     Throughout the relevant period, Pomodoro has used substantially the same equipment.

41.     Throughout the relevant period, Pomodoro employed substantially the same work force, including Plaintiffs, to perform the same jobs under substantially the same working conditions.

42.     Throughout the relevant period, when a corporation operating Pomodoro passed the operation of Pomodoro to a new corporation, the principal individual owners and managers would continue to exercise an interest in the new corporation.

43.     For example, upon information and belief, the husband and wife Zhen Huang Zheng is the husband of Yun Hui Chen a/k/a Winnie Chen together operated both 518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro, and are currently shareholders of 518 Pomodoro, Inc. d/b/a Pomodoro.

44.     For the foregoing reasons, 518 Pomodoro, Inc. d/b/a Pomodoro and Pomodoro Italian Express Inc. d/b/a Pomodoro are successor employers.

***Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class***

45.     Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of the tip credit.

46.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

47.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

48.     While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

49.     Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

50.     Upon information and belief, Defendants failed to keep full and accurate records

in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

51.    At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

52.    Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

53.    Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

***Plaintiff Jinquan Yin***

54.    From on or about July 22, 2017 to December 27, 2017, Plaintiff Jinquan Yin was employed by Defendants to work as a deliveryman at Pomodoro, located at 518 Ninth Avenue, New York, NY 10018.

55.    At the time he was hired, Plaintiff Jinquan Yin was not provided a notice reflecting true rates of pay and payday.

56.    From on or about July 22, 2017 to December 27, 2017, Plaintiff Yin Jinquan's regular work schedule ran from 10:30 to 22:00, for eleven and one half (11.5) hours per day, Sundays through Fridays, for six (6) days per week, with Saturdays off.

57.     Throughout his employment, Plaintiff Jinquan Yin was afforded one fifteen (15) minute meal break during each working day. However, if an order came in during his meal break, Plaintiff Jinquan Yin would have to cut his break short to deliver it.

58.     From on or about July 22, 2017 to December 27, 2017, Plaintiff Jinquan Yin worked approximately sixty-nine (69) hours per week.

59.     Throughout his employment, Plaintiff Jinquan Yin was paid a flat salary of one thousand dollars ($1,000.00) per month, in cash, no matter how many hours he actually worked.

60.     Throughout his employment, Plaintiff Jinquan Yin was not given a statement with his monthly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

61.     Throughout his employment, Plaintiff Jinquan Yin was not given notice that Defendants were claiming a tip credit against the minimum wage.

62.     Throughout his employment, Plaintiff Jinquan Yin was required to spend approximately two (2) hours each day performing non-tipped side work, including cutting delivery boxes, mopping the floors, chopping potatoes, washing glasses, and taking out the garbage.

63.     Throughout his employment, Plaintiff Jinquan Yin was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

64.     Throughout his employment, Plaintiff Jinquan Yin was not compensated for New

York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

***Plaintiff Letian Zhu***

65.    From on or about October 15, 2017 to December 5, 2017, Plaintiff **Letian Zhu**

was employed by Defendants to work as a deliveryman at Pomodoro, located at 518

Ninth Avenue, New York, NY 10018.

66.    At the time he was hired, Plaintiff **Letian Zhu** was not provided a notice reflecting

true rates of pay and payday.

67.    From on or about October 15, 2017 to December 5, 2017, Plaintiff **Letian Zhu**'s

regular work schedule ran:

      a.    From 10:30 to 22:00, for eleven and one half (11.5) hours per day,

      Mondays through Fridays, for five (5) days per week; and

      b.    From 17:00 to 22:00, for five (5) hours per day, Saturdays and Sundays,

      for two (2) days per week.

68.    Throughout his employment, Plaintiff **Letian Zhu** was afforded a fifteen (15)

minute meal break during each working day. However, if an order came in during his

meal break, Plaintiff **Letian Zhu** would have to cut his break short to deliver it.

69.    Throughout his employment, Plaintiff **Letian Zhu** worked approximately sixty-

seven and one half (67.5) hours per week.

70.    Throughout his employment, Plaintiff **Letian Zhu** was paid a flat salary of one

thousand dollars ($1,000.00) per month, in cash, no matter how many hours he actually

worked.

71.    Throughout his employment, Plaintiff **Letian Zhu** was not given a statement with

his weekly payment reflecting employee's name, employer's name, employer's address

and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

72.     Throughout his employment, Plaintiff *Letian Zhu* was not given notice that Defendants were claiming a tip credit against the minimum wage.

73.     Throughout his employment, in addition to his duties as a deliveryman, Plaintiff *Letian Zhu* was required to spend approximately one (1) hour per day performing non-tipped side work, including cutting cardboard, mopping floors, cutting potatoes, cleaning glasses, disposing garbage.

74.     Throughout his employment Plaintiff *Letian Zhu* was required to provide his own delivery vehicle was an electric motorcycle, this amounted to one thousand four hundred and twenty dollars ($1,420.00) in cost to the Plaintiff.

75.     Throughout his employment Plaintiff *Letian Zhu* was never re-compensated for any cost accrued as a result of the motorcycle usage.

76.     Throughout his employment, Plaintiff *Letian Zhu* was not compensated at least at one-and-one-half of the minimum wage or his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in each workweek.

77.     Throughout his employment, Plaintiff *Letian Zhu* was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

## **COLLECTIVE ACTION ALLEGATIONS**

78.     Plaintiffs bring this action individually and on behalf of all other and former non-exempt deliverymen, cashiers, bakers, amigos, other restaurant staff who have been or were employed by the Defendants for up to the last three (3) years, through entry of

judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

79.     Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

80.     All said persons, including Plaintiffs, are referred to herein as the "Class."

81.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

*Numerosity*

82.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

83.     There are questions of law and fact common to the Class which predominate over

any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.    Whether Plaintiffs and Class members are entitled to and paid minimum wage under the New York Labor Law;

c.    Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

d.    Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e.    Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f.    Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs' and the Rule 23 Class's start of employment and/or timely thereafter;

g.    Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h.    At what common rate, or rates subject to common method of calculation were and are Defendants required to pay the Class members for their work.

***Typicality***

84.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by

each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *Adequacy*

85.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

### *Superiority*

86.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the

wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

87.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage Brought on behalf of the Plaintiffs and the FLSA Collective]

88.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

89.     At all relevant times, Defendants had a policy and practice of refusing to pay the

statutory minimum wage to Plaintiffs, and the similarly situated collective action members, for some or all of the hours they worked.

90.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

91.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage
### Brought on behalf of Plaintiff and Rule 23 Class]

92.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

93.     At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

94.     At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the Class Members, for some or all of the hours they worked.

95.     Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

96.     An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent

(100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

97.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

98.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

99.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

100.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

101.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

102.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

103.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collective's labor.

104.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### COUNT IV.
**[Violation of New York Labor Law—Failure to Pay Overtime Brought on behalf of Plaintiff and Rule 23 Class]**

105.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

106.    An employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

107.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one-half times the hourly rate the Plaintiffs and the class are entitled to.

108.    Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

109.    Defendants' failure to pay Plaintiffs was not in good faith.

### COUNT V.
**[Violation of New York Labor Law—Spread of Time Pay Brought on behalf of Plaintiff and Rule 23 Class]**

110.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

111.    The NYLL requires employers to pay an extra hour's pay for every day that an

employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and

§§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

112.    Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and the Rule 23 Class]

113.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

114.    The NYLL requires that employees provide: a noon day meal period of at least

thirty (30) minutes for employees who work a shift of more than six hours extending over

the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5

p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before

11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a

time midway between the beginning and end of the shift for employees whose shift lasts

more than six hours and starts between 1 p m. and 6 a.m. NYLL § 162.

115.    Defendants failed to provide meal periods required by NYLL § 162 for every day

that Plaintiffs worked.

116.    Though the Department of Labor commissioner may permit a shorter time to be

fixed for meal periods than hereinbefore provided, such permit must be in writing and be

kept conspicuously posted in the main entrance of the establishment. No such permit is

posted.

117.    Defendants' failure to provide the meal periods required by NYLL § 162 was not

in good faith.

## COUNT VII.
### [Violation of New York Labor Law—Failure to Keep Records
### Brought on behalf of Plaintiff and Rule 23 Class]

118.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

119.    Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

120.    As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

121.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff in order to facilitate their exploitation of Plaintiffs' labor.

122.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs were not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice
### Brought on behalf of Plaintiff and Rule 23 Class]

123.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

124.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing

address if different; the telephone number of the employer. NYLL § 195-1(a).

125.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

126.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

127.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Wage Statements
### Brought on behalf of Plaintiff and Rule 23 Class]

128.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

129.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

130.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiffs' payday.

131.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT X.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs Brought on behalf of the Plaintiffs]

132.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

133.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

134.    Based on his personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of his bicycle and electricity delivery bicycle.

135.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

136.    Plaintiffs purchased, maintained and repaired the bicycle and electric bicycles at their own expense.

137.    Plaintiffs performed these deliveries for the sole benefit of the Defendants.

138.    Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

139.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

140.    Defendants never compensated Plaintiffs for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

141.    Defendants owe Plaintiffs their overdue costs of delivery vehicles, cost of battery change, if applicable, and maintenance of the bicycle.

### COUNT XI.
**[Violation of 26 U.S.C § 7434—Fraudulent Filing of IRS Returns.
Brought on behalf of the Plaintiff]**

142.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

143.    26 U.S.C. § 7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

144.    Due to Defendants' violations of 26 U.S.C. § 7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

### COUNT XII.
**[Violation of New York General Business Law § 349—Deceptive Acts and Practices.
Brought on behalf of the Plaintiff]**

145.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

146.    NY General Business Law § 349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other

person, such other person may bring a civil action for damages against the person so filing such a return.

147.    Due to Defendants' violations of NY GBS Law § 349, Plaintiffs are entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

148.    Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation (See Exhibit 2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on his own behalf, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by

filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)    An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)      An award of liquidated and/or punitive damages as a result of Defendants'

willful failure to overtime compensation, and "spread of hours" premium pursuant

to New York Labor Law;

k)      An award of costs and expenses of this action together with reasonable

attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and

663;

l)      The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety

days following the issuance of judgment, or ninety days after expiration of the

time to appeal and no appeal is then pending, whichever is later, the total amount

of judgment shall automatically increase by fifteen percent, as required by NYLL

§198(4); and

o)      Such other and further legal and equitable relief as this Court deems

necessary, just, and proper.

Dated: Flushing, New York
January 8, 2018

      /s/ John Troy
John Troy (JT 0481)
TROY LAW, PLLC
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com
*Attorney for the Plaintiffs, proposed*
*FLSA Collective and Proposed Class*
*Plaintiffs*